| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| Gabriel BERRY,<br><br>Plaintiff,<br><br>v.<br><br>Nancy A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 16-cv-1700-MMA-AGS<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT MOTIONS (ECF Nos. 19 & 22)** |

The key issue in this Social Security case is whether plaintiff's severe depression lasted continuously for a year.

## BACKGROUND

In August 2009, plaintiff Gabriel Berry was hospitalized overnight for suicidal thoughts. (AR 428, 527, 546.) Over the next 13 months, he made roughly 20 trips to doctors for his depression, mainly to see his psychiatrist Susan Kower, M.D. His depression began a "downhill course" after the first six months. (AR 460.) By the spring of 2010, though, he showed "improvement [with the] addition of Wellbutrin." (AR 454.) But in May 2010, his depression again took a turn for the worse, and the next month he had a "meltdown," leaving him "crying." (AR 515.) In September 2010, at his last psychiatric appointment, he refused further medications, saying they "didn't help" and were "battling a tidal wave." (AR 544, 557.) At that time, Dr. Kower rated the prognosis for his depression as "Guarded." (AR 525.)

In support of Berry's disability-benefits application, Dr. Kower stated that his depression persisted for over a year and was likely to cause him to miss more than three

1

days of work per month. (AR 532.) A consultative psychiatrist agreed that Berry had a "significant psychiatric impairment" and "psychiatric disability," with a diagnosis of "Major depression, recurrent type." (AR 429-30 (opinion of H. Douglas Engelhorn, M.D.).) Unlike that psychiatric consultant, a different medical consultant believed Berry could "sustain simple, repetitive tasks." (AR 433 (opinion of D. Conte, M.D.); *see* AR 430, 595.) But this second consultant nevertheless felt Berry "cannot work with the public." (AR 433, 595.)

The Administrative Law Judge rejected Dr. Kower's opinion and gave "little weight" to these two consulting experts. (AR 595-96.) Instead, the ALJ relied on independent psychiatric expert John Dusay, M.D., who ultimately concluded "there was not a continuous 12-month period" of severe depression, although he thought that Berry's "psychiatric problems were quite marked" and "acute" at times, including "periods of more severe difficulties." (AR 597, 650.)

Based on Dr. Dusay's opinion about the depression's limited duration, the ALJ classified it as non-severe. Yet he found that Berry had other severe impairments, such as chronic pain syndrome and degenerative joint disease. (AR 594, 597-98.)

## DISCUSSION

Berry appeals on the ground that the ALJ improperly rejected his treating doctor's opinion, especially as to his depression's duration. But logically imbedded within that complaint is an allegation that the ALJ erred by not listing depression as a severe impairment lasting at least a year. (*See* ECF No. 19-1, at 2, 7.) At a minimum, the Court must resolve the latter issue to adequately analyze the former.

### A.  Severe Impairment Lasting 12 Months

At Step Two of the Social Security Administration's sequential evaluation process, the claimant bears the burden of showing "a medically severe impairment or combination of impairments" that meets the duration requirement (or is "expected to result in death"). *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n.5, 161 (1987) (citations omitted). To satisfy the duration requirement, the impairment "must have lasted or must be expected to last for

2

16-cv-1700-MMA-AGS

a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant's burden is slight. In fact, because the Step Two inquiry is a "de minimis screening device used to dispose of groundless claims," an ALJ may reject a medically severe impairment only when that conclusion is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (alterations and citations omitted).

There is no question that Berry's repeated diagnosis of Major Depressive Disorder, Recurrent—Severe (DSM-IV code 296.33) qualifies as medically severe. (*See, e.g.*, AR 461, 464, 467, 470, 473, 483, 513, 516, 519, 522, 553, 555, 558); *see O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (pointing out that it was "nonsensical" for the ALJ to "decide[] that 'major depression, recurrent severe' isn't a severe impairment," since "the diagnosis, by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" (citations omitted)); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 376, 412-13 (rev. 4th ed. 2000) ("DSM-IV"). Thus, this Court will focus its analysis entirely on the 12-month duration requirement.

**(1) *Onset Date of Severe Depression—August 15, 2009***

On August 15, 2009, Berry was hospitalized overnight for depression with "suicidal thoughts." (AR 428, 527, 546.) That date is the first documented diagnosis of his depressive disorder in the records of the San Diego County Mental Health Services system. (AR 546.) And Dr. Kower—Berry's treating psychiatrist within that system—also notes that specific date as his first "hospitalization or emergency room treatment" for depression. (AR 527.) The ALJ mentions Berry's overnight hospitalization for "suicidal ideation" only as something the "claimant reports" and that "was not the required duration for an episode of decompensation." (AR 597; *see also* AR 595.) Although the treatment notes for that visit are absent, it is referenced throughout the administrative record, including in multiple medical documents and once at the hearing. (*See, e.g.*, AR 428 ("Psychiatric history reveals

3

that the patient was briefly hospitalized at CMH overnight in August of 2009. . . . [for] suicidal thoughts."); AR 475 (November 3, 2009 medical record: "He went to the EPU in August [2009] and was prescribed Paxil and Ativan – with no response. He returned and rx was changed to gabapentin and Effexor."); AR 481 ("I admitted myself 8/15/09 to SDCPH $\bar{x}$ [except] 23º58" didn't help"); AR 527 (Dr. Kower: hospitalized "8-15-2009 = San Diego County Ψ [Psychiatric] Hospital"); AR 546 ("Begin Date" of "08/15/2009" for depressive disorder); AR 642-43 (hospitalized for "emotional problem" in "August[] 2009"); AR 739 ("Hx of psych hospitalization in 2009."); *see also* AR 429-30 ("He was hospitalized for one night at CMH in 2009. . . . expressing suicidal thoughts."); AR 444 (February 2010 note from Dr. Conte: "MER reflects one brief psych hospitalization").)

Although Dr. Kower concluded that Berry's depression began even earlier (AR 532), and Berry reported being "depressed since elementary school" (AR 475), the Court will limit its review to the period starting with this August 15, 2009 hospitalization.

### *(2) End Date—September 15, 2010 (13 Months Later)*

On September 15, 2010, Berry met Dr. Kower for their last psychiatric appointment and was again diagnosed with a severe and recurrent Major Depressive Disorder. (AR 544, 557-58, 525). At that time, he had a Global Assessment of Functioning[1] score of 45

---

[1] The Global Assessment of Functioning is a 100-point mental-health scale for rating a patient's social, occupational, and psychological functioning, with 100 being the most high functioning and 1 the least. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citation omitted). Two GAF ranges relevant here are:

- **51-60**: "**Moderate symptoms** (e.g., flat affect and circumlocutory speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

- **41-50**: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

*Id.* (citation omitted; boldfacing added).

("Serious symptoms"), which was his second-worst recorded GAF during the entire period under review. (*Compare* AR 558 *with* AR 479.) His only reported "Core Symptom" was "Depression," for which Berry received a clinician's rating of 5 on a scale of "0-10" ("0=No Symptoms, 5=Medium and 10=Extreme"). (AR 557.) He appeared "disoriented" and declined further medications, saying they "didn't help." (*Id.*) It was noted that his bipolar medication was "battling a tidal wave." (*Id.*) After this last appointment, Dr. Kower rated Berry's prognosis as "Guarded" due to "depression [with] negative cognitive distortion [and] impaired interpersonal [skills]" and concluded he had "marked limitations in virtually every area." (AR 525, 596.)

The ALJ's only reference to this September 15, 2010 event is by implication. He mentions that four months earlier Berry reported an "increase in anxiety and depression (5 of 10)," with no other changes or abnormalities noted "through September 2010." (AR 596.) But the ALJ does not specify whether this period of admittedly increased depression qualified as severe. Indeed, while the ALJ implicitly admits that Berry's depression was sometimes medically severe, he does not pinpoint any of those severe occasions. (*See* AR 597 ("a few acute periods of depression"); AR 596 ("brief periods of oscillating anxiety and depression" from "November 2009 through 2010").)

At any rate, Berry's depression at this appointment meets the "de minimis" Step Two standard for medical severity, though it does not alone establish the requisite duration. *See, e.g.*, *O'Connor-Spinner*, 832 F.3d at 697 (holding that "major depression, recurrent severe" diagnosis by itself is medically severe); *Holzberg v. Astrue*, 679 F.Supp.2d 1249, 1261 (W.D. Wash. 2010) (reversing ALJ's Step Two finding that depression was non-severe despite claimant's many GAF scores between 55-60 that were in the "moderate" range, as well as two GAF scores—of 50 and "48-50"—that were in the "serious" range).

### (3) Continuous Period

The only remaining question, then, is whether Berry's severe impairment lasted for a "continuous period" of 12 months sometime between August 15, 2009, and September 15, 2010. The table on the next page summarizes the relevant history.

| **BERRY'S MEDICAL HISTORY FOR DEPRESSION** | | | | | |
|---|---|---|---|---|---|
| Date[2] | GAF Level | GAF Score | D[3] | Comments (Excerpts) | AR Citation(s) |
| 08/15/2009 | — | — | — | Hospitalization; "depressed . . . having suicidal thoughts" | AR 546, 527, 595, 428 |
| 11/03/2009 | Serious | 42 | — | "requesting services for depression," "medications aren't working" | AR 475, 479-80 |
| **11/12/2009** | — | — | — | "Psychiatry Intake," "depressed" | AR 481-84 |
| **12/16/2009** | Serious | 48 | 5 | "mood = the same = no noticeable Δ [chg.]" | AR 469-70 |
| **12/28/2009** | Serious | 46 | 5 | "effexor not helping depression, an emergency to me" | AR 472-73 |
| **01/06/2010** | Serious | 47 | 5 | "seroquel not helping . . . . still very stressed" | AR 466-67 |
| **02/04/2010** | Serious | 48 | 5 | "downhill course . . . depressed" | AR 460-61 |
| 02/10/2010 | Moderate | 55-60 | — | "overly upbeat," "significant psychiatric impairment," "psychiatric disability" | AR 429-30 |
| 02/25/2010 | Serious | 48 | — | "uncertain" if "addition of Ritalin helped" | AR 463-64 |
| 03/08/2010 | Serious | 50 | 2 | "Pt yelling . . . 'I deserve special treatment.'" | AR 451-52 |
| 03/22/2010 | Serious | 50 | 1 | "shows improvement," "better on Wellbutrin" | AR 454-58 |
| 04/06/2010 | — | — | — | "Depression" | AR 535, 540 |
| 04/19/2010 | Serious | 50 | 1 | "stable and denies any complaints" | AR 449-50 |
| **05/20/2010** | — | — | 5 | "s/ bodily = getting worse" | AR 512-13 |
| **06/09/2010** | Serious | 46 | 6 | "Guarded," "last night meltdown – fed up . . . crying[,] no friends" | AR 515-16 |
| **06/24/2010** | Serious | 47 | 5 | "? meds = more irritable" | AR 518-19 |
| **07/09/2010** | Serious | 46 | 5 | "Guarded – downhill" | AR 521-22 |
| **07/30/2010** | — | — | 5 | "s/ same . . . . depressed" | AR 550-51 |
| **08/06/2010** | Serious | 45 | 5 | "[Current Potential for Harm:] Guarded" | AR 552-53 |
| **08/30/2010** | Serious | 46 | 5 | "[Current Potential for Harm:] <u>Guarded</u>" | AR 554-55 |
| 09/15/2010 | Serious | 45 | 5 | "doesn't want meds – didn't help," "disoriented / seroquel = battling a tidal wave," "Prognosis. Guarded = depression" | AR 544, 557-58, 525 |

During this timeframe, Berry was repeatedly and without exception diagnosed with some type of depressive disorder, which was typically classified as a severe and recurrent Major Depressive Disorder (DSM-IV code 296.33). (*See, e.g.*, AR 461, 464, 467, 470, 473, 483, 513, 516, 519, 522, 553, 555, 558; *see also* AR 429, 450, 452, 455, 479, 540); *see*

---

[2] Dates in **bold** designate Berry's appointments with psychiatrist Dr. Kower.

[3] "D" refers to the clinician's rating of "Depression" on a scale of 0-10, with "0=No Symptoms." (*See, e.g.*, AR 557.)

DSM-IV, at 376, 381, 412-13. And he was continuously prescribed antidepressant medications, such as Seroquel, Effexor, Wellbutrin, Zoloft, and Cymbalta.[4] (*See, e.g.*, AR 453, 462, 465, 468, 471, 474, 476, 480, 484, 514, 517, 520, 523, 551, 556, 559.) Of the 16 times his GAF was assessed, he had 15 GAF scores in the "serious" range and never improved beyond the "moderate" range. (*See* Table, *supra*.) Finally, of the 15 clinicians' ratings of his depression, he had 12 ratings of "5" or worse ("Medium"), and—during a single six-week period—3 ratings of "1" or "2" (minimal symptoms). (*See id.*)

The ALJ interpreted this same medical record as showing only "brief periods of oscillating anxiety and depression" that were "not documented for a period of at least 12 consecutive months." (AR 596-97.) But he never identified the date ranges for those severe and non-severe periods with any specificity. In fact, he only discussed 4 of the 21 relevant medical appointments in detail. In two of those psychiatric visits—March 8, 2010, and April 19, 2010—the ALJ noted that Berry reported "minimal depression," with a clinician's rating of "1-2 out of 10." (AR 596; *see* AR 451, 449.) In the other two visits, however, the clinician's evaluation was more pessimistic. For example, at the February 10, 2010 examination, Dr. Engelhorn diagnosed Berry with "Major depression, recurrent type," which constituted a "significant psychiatric impairment" and "psychiatric disability." (AR 429-30; *see id.* ("Current gaf 55-60").) The ALJ omits these particular findings and, in any event, accords Dr. Engelhorn's opinion "little weight." (AR 595 (also rejecting similar opinion of "agency medical consultant" who "relied solely on Dr. Engelhorn's examination"); AR 433.) Similarly, for the May 20, 2010 session, the ALJ

---

[4] *See Davis v. United States*, 858 F.3d 529, 534 (8th Cir. 2017) (Zoloft is a prescription antidepressant); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 140 (3d Cir. 2017) (Effexor is a "drug used to treat major depression."); *Voigt v. Colvin*, 781 F.3d 871, 875 (7th Cir. 2015) (Cymbalta is a "prescribed antidepressant medicine."); *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1355 (11th Cir. 2011) (Seroquel is used to treat "bipolar disorder," among other conditions; *Blakeman v. Astrue*, 509 F.3d 878, 889 (8th Cir. 2007) (Wellbutrin is "an antidepressant.").

7

concedes that Berry "reported an increase in anxiety and depression (5 of 10)," but fails to spell out whether those symptoms were severe for Step Two purposes. And even during the March and April 2010 visits, with reported "minimal depression," Berry's GAF was still in the "serious" range, and on one occasion he yelled, "I deserve special treatment." (AR 450-52.)

Yet even if Berry's condition improved on certain occasions, the ALJ was wrong to conclude that his impairment had therefore ceased. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citation omitted); *see also Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("'Improvement that is only temporary will not warrant a finding of medical improvement.' Although the ALJ pointed to isolated signs of improvement, the ALJ could not find medical improvement on that basis unless the ups and the downs of [the claimant's] development showed *sustained* improvement." (alterations and citations omitted)); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("The fact that a person suffering from depression makes some improvement 'does not mean that the person's impairment no longer seriously affects his ability to function in a workplace.'" (alterations and citations omitted)).

At least for the purposes of Step Two's de minimis threshold, Berry met his burden of proving a continuous 12-month period of severe impairment. *See, e.g., Simmons v. Colvin*, No. CV 12-06060-AJW, 2013 WL 3337666, at *3-4 (C.D. Cal. July 1, 2013) (noting that evidence of a single hospitalization in November 2008 "after a suicide attempt," a diagnosis of "major depressive disorder, recurrent," 11 months of depression therapy, and treatment with antidepressants qualified as medically severe and met the durational requirement, notwithstanding periods of apparent improvement and normalized findings). And the ALJ lacked substantial evidence for finding otherwise. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (holding that a court "may set aside

8

a denial of benefits only if it is not supported by substantial evidence or is based on legal error" (citation omitted)). In light of this holding, the Court need not address the alternative argument for satisfying the 12-month duration requirement: that Berry's depression was *expected* to "last at least twelve months" (*See* AR 531.)

## B. Treating Physician Rule

The analysis of Berry's chief complaint—that the ALJ improperly rejected treating psychiatrist Dr. Kower's opinion—is now more straightforward. "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record.'" *Trevizo v. Berryhill*, 862 F.3d 987, 997 (9th Cir. 2017) (alterations omitted) (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion is contradicted by another doctor, as here, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citations omitted).

The ALJ found that "the opinion of Dr. Kower did not satisfy the durational threshold for a severe impairment. . . ." (AR 596.) As the prior discussion demonstrated, however, the duration requirement was met. When Dr. Kower opined that Berry's depression lasted over a year, she was aware of Berry's August 2009 depression-induced hospitalization within the San Diego County Mental Health Services system—the same system she worked in. (*See* AR 527, 532; *see, e.g.*, AR 470, 546.) And she personally treated him through September 2010. (*See, e.g.*, AR 557-58.) Thus, her opinion about the depression's yearlong duration was amply justified.

Though not expressly identified as reasons, the ALJ made two other comments that could be read as implicit criticisms of Dr. Kower's opinion. First, the ALJ claimed that Berry's depressive symptoms "were not consistently present in office visits" and "not consistently documented in the treatment records." (AR 596.) As previously discussed, the ALJ merely identified waxing and waning symptoms, which were insufficient to reject Dr. Kower's duration opinion. Second, the ALJ remarked that Berry was under

9

Dr. Kower's care for only a "very brief period of treatment," and Dr. Dusay characterized Berry's care overall as a "sporadic treatment history." (*Id.*) But the ALJ does not say why he believes Dr. Kower's 13 sessions in a 10-month period is "very brief," or why roughly 20 sessions overall in a 13-month span is "sporadic." Since shorter treatment relationships have passed muster, this conclusion required more explanation. *See Colcord v. Colvin*, 91 F. Supp. 3d 1189, 1196 (D. Or. 2015) (rejecting "short treatment history" as a rationale for discounting a treating psychiatrist's opinion when the treatment lasted "three months" and the doctor was "meeting with plaintiff on a bi-weekly basis").

In addition to these potential reasons, the Commissioner adds several more that the ALJ did not explicitly enumerate as grounds for rejecting Dr. Kower's opinion. Although "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking," the Court will briefly discuss each of these points. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citations omitted). First, the Commissioner argues that Berry "did not receive mental healthcare for months after his alleged onset date." (ECF No. 22-1, at 6.) By "onset date," the Commissioner is referring to the alleged onset date for disability benefits, which was January 2009. (*See* AR 594.) But Berry received regular treatment during the 13-month period that was critical to Dr. Kower's duration opinion. In addition to the 21 visits reflected in the above Table, Berry had additional care in the six weeks following his August 2009 hospitalization (although poorly documented in the record). After that hospitalization, he was "prescribed Paxil and Ativan," which were ineffective, so he "returned and [his prescription] was changed to gabapentin and Effexor." (AR 475.) At his November 3, 2009 visit, in fact, he "picked up a 15 day refill." (*Id.*)

Second, the Commissioner suggests that Berry's "voluntary cessation of treatment" undermines Dr. Kower's duration opinion. (ECF No. 22-1, at 6.) Even assuming Berry ceased all treatment in September 2010, that happened on the last day of the 13-month period. So, it had no possible impact on the validity of Dr. Kower's durational analysis.

1 Finally, the Commissioner argues that Berry's "activities of daily living demonstrated a level of mental functioning that undermined disabling limitations." (ECF No. 22-1, at 7.) There are two problems with this point: It goes to severity, not duration. And even as to severity, the standard at Step Two is not whether the condition is "disabling," but whether it is medically severe. So, this rationale does nothing to undermine Dr. Kower's duration opinion.

Since none of these reasons are specific or legitimate, and because Dr. Kower's duration opinion was well-supported and consistent with the rest of the record, it should have been given controlling weight. On this basis, too, the case must be remanded.

## C. Harmless Error Analysis

Any error in "neglecting to list [an impairment] at Step 2" is harmless when the "ALJ extensively discussed [the claimant's impairment] at Step 4 of the analysis." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted). But after the Step Two error here, the ALJ never again included depression in his analysis. (*See* AR 599 (passing reference to Berry's 2013 application, which "alleged secondary depression").) Thus, it was not harmless, and the case must be remanded. *See Hansen v. Colvin*, No. CV 15-CV-00190-REB, 2016 WL 4582041, at *6 (D. Idaho Sept. 1, 2016) (holding that Step Two error required remand because "unlike in *Lewis*[,] . . . the ALJ in this case simply did not consider Plaintiff's headaches in the remainder of his analysis at steps three and four.").

## CONCLUSION

This is Berry's second trip to U.S. District Court in his eight-year quest for Social Security benefits. *See Berry v. Colvin*, Case No. 13-CV-0979 W (WVG), 2014 WL 12531194 (S.D. Cal. May 7, 2014); (*see* AR 239, 770). And the Court again finds legal error in his administrative proceedings. (*See* AR 769-98, 800-02.) The ALJ erred by rejecting the duration opinion of Berry's treating psychiatrist, as well as by failing to include his depressive disorder among his severe impairments at Step Two of the five-step sequential evaluation process. Thus, the Court recommends that Berry's summary

judgment motion (ECF No. 19) be **GRANTED**, defendant's summary judgment motion (ECF No. 22) be **DENIED**, and the case be remanded for completion of the five-step process consistent with this opinion.

The parties must file any objections to this report by September 1, 2017. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to any such objection within 14 days of being served with it. *Id*.

Dated: August 18, 2017

Hon. Andrew G. Schopler
United States Magistrate Judge